IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JEANETTE E., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 50277 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Iain D. Johnston |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Jeanette E. ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment, (Dkt. 13), is **denied** and the Commissioner's memorandum, which this Court will construe as a cross-motion for summary judgment, (Dkt. 23) is **granted.**

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her application on November 29, 2010, alleging disability beginning on January 1, 2004. R. 419-427. Plaintiff's application was denied initially and on reconsideration. *Id*. at 205, 211. On May 13, 2016, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 110-46. The ALJ rendered an unfavorable decision on October 4, 2012. *Id.* at 153-60. On January 29, 2014, the Appeals Council granted

1

the request for review and remanded the case. *Id.* at 167-170. The second hearing was held on May 14, 2014. *Id.* at 86-109. Plaintiff, represented by counsel, testified, along with medical expert ("ME") Dr. Mark Oberlander and vocational expert ("VE") Dr. Craig Johnston. *Id.* The ALJ again rendered an unfavorable decision on June 18, 2014. *Id.* at 172. The Appeals Council again granted the request for review and remanded the case for a third hearing on December 1, 2015. *Id.* at 200-03. On July 19, 2016, Plaintiff, represented by counsel, testified at a third hearing held before an ALJ. *Id.* at 39-85. The ALJ also heard testimony from ME Allen Heinemann and VE James Radke. *Id.*

At the start of the third hearing, the ALJ told Plaintiff's counsel that listing 12.05 (intellectual disorder) did not apply to Plaintiff, both based on the testimony at the prior hearing, as well as based on the wording of the listing itself. R. 44. Plaintiff's counsel conceded that in the alternative, listing 12.02 (neurocognitive disorders) might apply. Plaintiff was 49 years old at this third hearing. Plaintiff testified to living with two of her sons and their best friend. *Id.* at 48. Plaintiff also had full time custody of her two year old granddaughter at the time. *Id.* at 49. Plaintiff received assistance from the state for her granddaughter, as well as food stamps, but she otherwise had no income. *Id.* She no longer drove after being in a car accident with her granddaughter. *Id.* at 50. Plaintiff stated she had not seen her rheumatologist in two years, citing a lack of gas money as her reason for not being able to schedule appointments. *Id.* at 52-53. She did, however, see her primary care physician every few months. *Id. at* 54. Plaintiff also reported smoking half a pack of cigarettes a day, despite being advised to quit. *Id.* at 54-55. Plaintiff reported that she took care of her granddaughter, occasionally cooked meals, washed dishes, did both her and her granddaughter's laundry, and helped with grocery shopping. *Id.* at 58-59. She also testified that she had been hit by a car at the age of 5, and that she had repeated

kindergarten. *Id.* at 64. She was in another car accident in 2004 in which she hit her head on the steering wheel after hitting a brick wall. *Id.* at 65. Plaintiff reported difficulty with reading, but she stated she could read books to her granddaughter. *Id.* at 68-69.

Dr. Heinemann then testified that Plaintiff suffered from a cognitive impairment that resulted from "several traumatic brain injuries over her lifespan." R. 76. He noted that Plaintiff's school records show scores that are several grade levels below her age level. *Id.* at 77. Plaintiff's math scores were at a 3.6 grading level when she was almost 14 years old. *Id.* Dr. Heinemann opined that Plaintiff's primary impairment was her cognitive impairment, and that her adjustment disorder was likely secondary to the cognitive impairment. *Id.* at 78-79. Dr. Heinemann stated that Plaintiff had mild limitations in her activities of daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence, or pace, and no episodes of decompensation. *Id.* at 79-80. Dr. Heinemann stated that for Plaintiff to work full time, she would be limited to simple, routine, repetitive tasks. Interactions with the general public should be routine and predictable in nature, not involving a lot of problem solving or assisting, direction giving, or problem solving with coworkers or the public. *Id.* at 80. Dr. Heinemann opined that the consultative examiner, Dr. Alford, casts Plaintiff's test results in a way to make her appear as disabled as possible. *Id.* at 81. After a detailed discussion on Dr. Alford's testing, Dr. Heinemann found that Plaintiffs scores were the rough equivalent to IQ scores between the mid seventies to eighty. *Id.* at 82.

The ALJ asked the VE, James Radke, the following hypothetical: assume a 49 year old who could sit six to eight hours out of the day; stand and walk at least two hours out of the day; lift and carry frequently up to ten pounds and occasionally up to twenty pounds; someone who could only occasionally stoop; could occasionally climb ladders, ropes, and scaffolds; limited to

3

jobs that are simple, repetitive routine, should work primarily alone with only occasional contact with the general public, coworkers, and supervisors; could not interact on joint tasks with coworkers, jobs that would require little independent judgment with routine changes only, no multiple changes; and a job with no strict or fast-paced production quotas. *Id.* at 82-83. The VE found that Plaintiff could perform the jobs of sorter, general office clerk, and mail clerk. *Id.* at 83. The ALJ then asked the VE to adjust the hypothetical to include that the person could only occasionally stoop, crawl, crouch, and kneel. *Id.* at 83. The VE testified that the same jobs would be available to Plaintiff. *Id.* Finally, the VE stated that the maximum amount of absences allowed would be one day a month, and that Plaintiff would need to be alert, focused, and productive between 92 and 95 percent of the workday. *Id.* at 84.

The ALJ issued a partially favorable decision on August 5, 2016, finding that Plaintiff was disabled as of January 25, 2016, but not disabled prior to that date. *Id.* at 13-38. On July 5, 2017 Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. *Id.* at 1-6. This action followed.

**B. ALJ Decision**

On August 5, 2016, the ALJ rendered a partially favorable decision. R. 13-38. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id.* at 18. At step two, the ALJ found Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine; mild degenerative disc disease of the cervical spine; questionable fibromyalgia; cognitive disorder; and anxiety disorder. *Id.* at 19. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, 416.926). *Id.* at 22. The

ALJ then found that Plaintiff had mild restrictions in her activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. *Id.* at 23.

Before step four, the ALJ found that she had the residual functional capacity ("RFC") to perform work at a sedentary exertional level as defined in 20 C.F.R. 416.967(a), except for the following limitations:

> [C]an lift and carry 20 pounds occasionally and 10 pounds frequently; occasionally stoop, kneel, crouch, crawl and climb; Is limited to simple, routine and repetitive tasks, with routine changes only, and requiring little independent judgment; should work primarily alone, having only occasional contact with the general public, supervisors and coworkers, and not having to interact on joint tasks; and should perform no strict or fast-paced production quotas.

R. 24. At step four, the ALJ concluded that Plaintiff was capable of performing work as a sorter, general office clerk, or mail clerk. *Id*. at 26. Based on this determination, the ALJ found that Plaintiff was not disabled under the Act prior to January 25, 2016. *Id*. at 27. However, on January 25, 2016, Plaintiff's age category changed, and the ALJ found that Plaintiff was disabled under the Act as of January 25, 2016. *Id.*

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

5

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

On appeal, Plaintiff argues that reversal or remand is appropriate for two reasons. First, Plaintiff argues that the ALJ failed to properly address Plaintiff's cognitive impairment. Second, Plaintiff alleges that the ALJ erred in her finding at step five.

**A. Cognitive Impairment**

Plaintiff argues that the ALJ erred in finding that Plaintiff did not satisfy any listing related to her cognitive disorder. Plaintiff asserts that the ALJ failed to mention Listing 12.05, and the ALJ relied on flawed testimony and a misunderstanding of the regulations in her analysis. In the 2014 hearing, the ALJ told Plaintiff's attorney that an IQ score between sixty and seventy before the age of 22 was required to satisfy Listing 12.05. R. 90. Plaintiff argues that this statement is wrong, and that the ALJ failed to consider 12.05 as a possible Listing for Plaintiff.

Listing 12.05 describes an intellectual disability and provides the following:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

6

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ….
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 505, Subpt. P. App. 1, § 12.05 (effective date 12/18/07 to 9/28/16), Program Operations Manual System (POMS) DI 341320009. Accordingly, to meet the criteria for Listing 12.05(C), Plaintiff must prove that she met *all four* of the following requirements: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins v. Astrue*, 226 Fed. App'x 600, 604-05 (7th Cir. 2007) (citations omitted); *see* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(A) (effective date 12/18/07 to 9/28/16), POMS DI 341320009 (stating that an impairment will meet Listing 12.05 if it satisfies both the diagnostic description in the introductory paragraph and any one of the four sets of criteria). The ALJ did not consider Listing 12.05 in her decision. R. 23. The ME in the 2014 hearing stated that Plaintiff's impairments only fall under three listings: 12.02, 12.04, and 12.09. *Id.* at 99-100. However, the ME in 2014 did not have the benefit of viewing Plaintiff's education records. The ME in 2016 did have Plaintiff's education records, and after an analysis of Plaintiff's impairments, he found that the relevant listing was 12.02. *Id.* at 77.

The crux of Plaintiff's argument is that the ALJ falsely found that Plaintiff has not satisfied the second requirement of listing's introductory paragraph; namely, that Plaintiff

had "deficits in adaptive functioning" that manifested before age 22. The Commissioner argues that this requires a report of an IQ score between 60 and 70 before age 22. R. 90. The Court disagrees. The listing reads as stating that Plaintiff must show deficits in adaptive functioning before the age of 22. The Seventh Circuit defines deficits in adaptive functioning as an "inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR)* 42 (4th ed. 2000)). A claimant with a low IQ score alone may still be able to perform work; however, if a claimant "cannot cope with [the challenges of ordinary everyday life], he or she is "not going to be able to hold down a full-time job." *Novy*, 497 F.3d at 710; *see also Adkins v. Astrue*, 226 Fed. App'x 600, 605 (7th Cir. 2007) (stating that the ALJ should consider other factors such as the claimant's life activities and employment history).

The requirement for IQ scores between sixty and seventy and the requirement for deficits in adaptive functioning prior to age 22 are two separate criteria. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05(C) (effective date 12/18/07 to 9/28/16), POMS DI 341320009. Therefore, the ALJ was incorrect in her statement that 12.05(C) cannot be considered based on a lack of requisite IQ score in the record before age 22. However, the ALJ's misunderstanding of 12.05(C) in this area is not enough to require remand. Rather, the failure to mention specific listings along with a perfunctory analysis is required for remand. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand"). Here, the ALJ did more

than a perfunctory analysis, and the ALJ relied on other medical opinions in determining which listing was appropriate. Any error here is merely harmless. Plaintiff has failed to satisfy her burden of proof for Listing 12.05, and therefore the ALJ was correct in using 12.02.

The harmless error doctrine applies when the court can conclude with certainty that the ALJ would reach the same conclusion absent the error. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, the Court is confident that the ALJ would reach the same result on remand in ignoring 12.05 even taking into account Plaintiff's criticisms regarding the ALJ's misunderstanding of the listing.

As an initial matter, the ALJ found that the correct listing for analysis of Plaintiff's impairments was Listing 12.02. First, Section 11.00F specifies that cognitive impairments caused by cerebral trauma, such as a traumatic brain injury (TBI) are to be evaluated under Listing 12.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00F (effective 12/15/04 to 9/28/16), POMS DI 34131.013. Listing 12.02 applied to impairments where "the presence of a specific organic factor" was "judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.02 (effective date 12/18/07 to 9/28/16), POMS DI 341320009. Both of the MEs at the 2014 and 2016 hearings testified that Plaintiff's cognitive impairment fell under 12.02. R. 78-80, 100. Dr. Heinemann, the ME in 2016, concluded that Plaintiff's head injury in 2005 likely exacerbated her cognitive deficits, and therefore the applicable listing was 12.02. *Id.* at 78. No psychological expert or other medical professional listed 12.05 as the correct listing for Plaintiff's impairment. Plaintiff contends that Dr. Richard Alford, Ph.D., provided a report that supports her assertion that

12.05 should have been considered. Dr. Alford provided a neuropsychological consult in 2014. *Id.* at 1375. Dr. Alford attributed Plaintiff's cognitive impairment to multiple closed head and traumatic brain injuries. *Id.* at 1382. This statement is more consistent with 12.02 than with 12.05, as 12.02 is the listing used to evaluate mental impairments stemming from traumatic brain injuries.

Two psychologists found that Plaintiff suffered from a cognitive disorder: Drs. Heinemann and Alford. R. 76-78, 1382. Both of these doctors attributed Plaintiff's cognitive disorder to her history of traumatic brain injuries or closed head injuries, which is more consistent with 12.02. Plaintiff alleges in her reply that she is not arguing that 12.02 does not apply, but rather that she should have been evaluated under both 12.02 and 12.05. While Plaintiff is correct in stating that a claimant may fit under more than one listing with her impairments, she has not satisfied her burden of proof. Plaintiff has the burden of proof in steps one through four of the ALJ decision. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). Here, Plaintiff contends that her enrollment in special education classes while in school satisfies the second requirement of Listing 12.05(C), which requires "deficits in adaptive functioning initially manifested during the development period before age 22." 20 C.F.R. pt. 505, Subpt. P. App. 1, § 12.05 (effective date 12/18/07 to 9/28/16), (POMS) DI 341320009. However, this Court is not convinced that special education is enough to satisfy the requirement of deficits in adaptive functioning as defined by the Seventh Circuit, and Plaintiff has failed to cite any authority to support that proposition.

On the contrary, the Seventh Circuit has encouraged a broader look at a claimant's functioning levels in determining whether deficits in adaptive functioning

were present before the age of 22. *Atkins*, 226 Fed. Appx. at 605 (special education through eighth grade was not enough to "demonstrate significantly subaverage general intellectual functioning nor deficits in [claimant's] adaptive functioning prior to age twenty-two."). In *Atkins*, the Seventh Circuit looked at other factors, such as the claimant's life activities and employment history. *Id.* While Plaintiff was enrolled in special education classes through high school, there is little else to show she suffered from a deficit in adaptive functioning prior to age twenty-two. Other evidence analyzed by the ALJ indicates that Plaintiff was not suffering from deficits in adaptive functioning. She graduated from high school, is capable of reading and writing (albeit with some difficulties with complex reading), she manages to take care of her two year old granddaughter (of whom she has sole custody) with minimal help during the day, and she reads to her granddaughter and practices flashcards with her. R. 24, 25. Plaintiff also completes a variety of household chores and activities of daily living on her own. *Id.* This Court is not aware of any authority that enrollment in special education classes satisfies the requirement of Listing 12.05(C) without other supporting evidence, and the evidence since age twenty-two indicates that Plaintiff is not suffering from an "inability to cope with the challenges of ordinary everyday life," the Seventh Circuit's definition of deficits in adaptive functioning. *Novy,* 497 F.3d at 710 (citation omitted). Moreover, the ALJ found that Plaintiff had only mild limitation in daily activities, and she managed her own finances, was capable of driving before her most recent accident, had completed a CPR course, and prepared meals occasionally. R. 24. Plaintiff's brief does not identify any evidence in the record to support the idea that she is unable to cope with the challenges of ordinary everyday life. Therefore, Plaintiff has not satisfied her burden of

proving that she has met Listing 12.05(C), and any error by the ALJ is harmless. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result").

**B. RFC**

Plaintiff next argues that the ALJ's RFC failed to address Plaintiff's difficulties in reading and writing. Plaintiff further contends that because the ALJ's RFC failed to address her difficulties in reading and writing, a job given by the VE (general office clerk) required reading and writing skills that Plaintiff did not possess. Plaintiff asserts that the record includes multiple mentions of her deficits in reading and writing, including educational records, errors in her function reports, and her testimony. R. 69, 95-96, 120, 505, 1375, 1380.

However, the ALJ properly relied on the testimony of the medical experts, who "effectively translated" medical opinions regarding claimant's limitations into an RFC assessment. *Milliken v. Astrue,* 397 Fed. Appx. 218 (7th Cir. 2010). Here, the ALJ relied on the ME opinions, and she adopted the most restrictive version of those opinions to accommodate Plaintiff's limitations. R. 24, 80, 103-04. Moreover, Dr. Heinemann, the ME in the 2016 hearing, specifically considered Plaintiff's education records that documented her below grade-level scores in reading, spelling, and math. *Id.* at 77. Plaintiff asserts that she has "*severe* deficits" documented in her education records, but the ME addressed these records and gave an RFC in light of these education records. (Dkt. 13 at 14), R. 77. The ALJ properly relied on the ME opinions in creating the RFC. Plaintiff does not point to any such severe deficits; on the contrary, the record shows that

Plaintiff has at least basic reading and writing skills. Plaintiff testified to reading her Bible and devotional books, completing a CPR course, completing DCFS certification, and completed a function report on her own. *Id.* at 51, 59, 501-09. Although the function report contains spelling and grammar errors, Plaintiff completed the function report herself, and it is both legible and understandable. *Id.* These activities do not show the severe deficits alleged by Plaintiff; rather they seem to fit into the ALJ's RFC, finding that Plaintiff could complete simple, routine, and repetitive tasks. *Rheam v. Astrue*, 2009 U.S. Dist. LEXIS 3690 at *13-14 (finding that limiting a claimant to simple, routine, repetitive tasks is consistent with reading, spelling, and math abilities at fourth and fifth grade levels).

Even if "reasonable minds could differ" concerning the ALJ's assessment of Plaintiff's limitations, the ALJ's decision must be upheld if the decision is adequately supported. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007) (quoting *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996)). The ALJ here adequately supported her decision with substantial evidence in the record and the opinion of the medical experts. The Court will not reweigh evidence when the ALJ's decision is supported by substantial evidence.

**C. Step Five**

Finally, Plaintiff argues that the ALJ erred in failing to address the source of the VE's job numbers, as the DOT does not offer any guidance on job numbers. However, the Court finds that Plaintiff has forfeited this argument by failing to object to the VE's testimony at the hearing. R. 82-84. Plaintiff was represented at both hearing by an attorney, and therefore is presumed to have put on her best case before the ALJ. *Skinner*

*v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Because Plaintiff's lawyer did not question the basis for the VE's testimony, any objection to it now is forfeited. *Barret v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Since Plaintiff failed to address this issue at the hearing, she cannot do so now.

### III. CONCLUSION

For the reasons stated in this opinion, Plaintiff's motion for summary judgment (Dkt. 13) is denied, the Commissioner's motion (Dkt. 23) is granted, and the decision is affirmed.

Dated: January 29, 2019　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge